# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:10cv143

| | |
|---|---|
| SHARON A. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 7] and the Defendant's Motion for Summary Judgment [Doc. 9].

## I. PROCEDURAL HISTORY

Plaintiff Sharon A. Smith filed an application for a period of disability and disability insurance benefits and Supplemental Security Income on January 12, 2005, alleging that she had become disabled as of November 4, 2002. [Transcript ("T.") 131]. She applied again on March 1, 2007 alleging an onset date of March 15, 2002. [T. 142]. At hearing, her onset date was confirmed as November 4, 2002. [T. 33]. The Plaintiff's applications were denied initially and on reconsideration. [T. 76-81, 82-87, 88-91, 104-07]. A hearing was held

before Administrative Law Judge ("ALJ") Michael Davenport on June 11, 2009. [T. 30-63]. On July 2, 2009, the ALJ issued a decision denying the Plaintiff benefits. [T. 15-29]. The Appeals Council accepted additional evidence, but denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-5]. The Plaintiff has exhausted her available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than

creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's

physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. FACTS AS STATED IN THE RECORD

At the time of her hearing before the ALJ, Plaintiff was 49 years old. She testified at the hearing that she had finished the eighth grade but quit school to help support her family. [T. 34]. She testified that her grades were bad due to absences and learning issues. [T. 35].

She testified that she worked at Dollar General for eight years. Her responsibilities included stocking merchandise, unloading trucks, and running

the cash register. [T. 40]. She eventually was promoted to assistant manager. [T. 40]. During her employment, she was injured in two separate workplace accidents. [T. 38]. In both instances, improperly stacked boxes of product toppled onto her, injuring her neck. [T. 39]. At one point, she was accused of larcency, but that charge was ultimately dismissed for lack of evidence. Nevertheless, the charge caused her significant stress. She testified that she quit her job in November 2002, and has not worked since. [T. 42].

Plaintiff testified that she is disabled by pain and limitations in her back, neck, legs, and arms, as well as mental limitations. [T. 43]. She also claims to suffer from acid reflux, Barrett's disease, a hiatal hernia, intestinal problems and bladder problems. [T. 44]. Plaintiff rated her pain at seven to eight on a ten-point scale. [T. 44]. She testified that she is only able to sit for twenty minutes at a time due to an irritating knot in her lower back. [T. 45]. She testified that she has difficulty turning her head from side to side or looking up. [T. 46]. She stated that pain radiates into her hips, legs and feet. [T. 46]. Plaintiff further stated that she can stand only for fifteen minutes at a time due to pain, and that she must alternate between sitting and standing. She reported that she can only walk 200 feet. [T. 47]. Plaintiff reported that lifting her 15-pound granddaughter is painful [T. 48], and that lying down is very

5

painful to her back, hips, legs and arms [T. 49]. She reported that she sleeps an average of four to five hours per night. [Id.]. She testified that she uses Tramadol and over-the-counter medications for pain. [T. 58].

Plaintiff's activities of daily living include rotating between standing and sitting on a stool to cook, and "help[ing] with [her] husband." [T. 50]. She reported doing some housework, but noted that it took a long time. [T. 53]. She stated that bladder problems limited her ability to go out. [T. 52]. She stated that she has no hobbies and does not socialize outside of her family. [T. 56]. She reported that she does not watch much TV, but does occasionally read. [T. 57].

Plaintiff stated that she had no problems with depression before she was accused of larceny. Once that charge was made, she developed depression and thoughts of suicide. She further reported that she cries a lot because of her limitations. [T. 55].

The record contains significant medical evidence of the physical impairments that Plaintiff claims. The only impairments that Plaintiff's appeal touches upon, however, are her complaints of disabling pain and mental impairments. The only medical evidence in the record concerning Plaintiff's mental limitations are records from one mental health counseling session in

late 2007 [T. 387-404] and the psychological evaluation of Dennis Hoogerman, Ph.D. [T. 422-50]. The former records indicate that Plaintiff failed to meet her next appointment or return the counselor's calls, and she was therefore discharged due to non-compliance. [T. 387-404]. Dr. Hoogerman's one-time psychological evaluation was performed at the behest of Plaintiff's prior legal counsel on June 1, 2009, just ten days prior to her hearing before the ALJ.[1]

In the course of his evaluation, Dr. Hoogerman performed WAIS-IV IQ testing and administered the MMPI-2 and WRAT4 tests. Plaintiff's full scale IQ was 72. She scored a 66 on verbal comprehension, 75 on perceptual reasoning, 74 on working memory, and 97 on processing speed. Other than the processing speed, all of these scores were in the bottom fifth percentile for persons of her age. [T. 427]. Dr. Hoogerman observed Plaintiff to have a flat facial expression, to make below average eye contact, to have impoverished thought content and minimal psychological insight, and to have a preoccupation with pain.

---

[1]In a supplemental report, Dr. Hoogerman clarified that the original evaluation was prepared on June 1, 2009 rather than June 1, 2007 as inadvertently noted on the evaluation. [T. 482].

7

On these bases, Dr. Hoogerman formed diagnostic impressions of major depressive disorder, recurrent and moderate with anxious features, pain disorder associated with both psychological factors and a general medical condition, dependent personality disorder, borderline intellectual functioning, and a GAF score of 50. [T. 433]. He then filled out a Psychiatric Review Technique (PRT) form, finding that Plaintiff met Listings 12.04 and 12.08 and equaled listings 12.05 and 12.07. [T. 436]. As to the so called "B" criteria,[2] Dr. Hoogerman found that Plaintiff had marked limitations in activities of daily living; moderate difficulties in maintaining social functioning; and marked difficulties in maintaining concentration, persistence or pace. He found there was insufficient evidence to determine whether Plaintiff had experienced any episodes of decompensation. [T. 446]. Last, he completed a Medical Source Opinion (Mental) which was consistent with the PRT. [T. 450].

Following the entry of the ALJ's decision, the Appeals Council received a supplemental report dated November 7, 2009 from Dr. Hoogerman. This report took issue with points in the ALJ's decision, but mostly reiterated Dr. Hoogerman's original findings. [T. 483]. He concluded in this supplemental report that Plaintiff would have severe limitations in her ability to complete a

---

[2] This refers to the criteria set out in paragraph B of Listings 12.02 through 12.04, 12.06 through 12.08 and 12.10.

8

normal workday without interruptions from psychologically based symptoms, and moderately severe limitations with detailed instructions, attention and concentration, performing on schedule, and setting realistic goals. [T. 482-85].

## V.     THE ALJ'S DECISION

On July 2, 2009, the ALJ issued a decision denying the Plaintiff benefits. [T. 15-29]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured (DLI) was March 31, 2008 and that she had not engaged in substantial gainful activity from November 4, 2002, the alleged onset date, through her DLI. [T. 17]. The ALJ then determined that degenerative disc disease, mild degenerative joint disease of the right shoulder, intermittent episodes of joint inflammation, and depression were severe impairments. [T. 17]. The ALJ concluded that the Plaintiff's impairments did not meet or equal a listing. [T. 24]. He then determined that Plaintiff retained the residual functional capacity (RFC) to perform unskilled light work with frequent changes of position. [T. 26]. He found that Plaintiff was unable to perform her past relevant work, but that considering her age, education, work experience, and residual functional capacity, jobs existed in significant numbers in the national economy that Plaintiff could perform. [T.

9

28]. Accordingly, he concluded that the Plaintiff was not disabled from November 4, 2002 through the date of his decision. [T. 29].

VI. **DISCUSSION**

Plaintiff challenges the ALJ's weighing of Dr. Hoogerman's opinions in evaluating her mental impairments, and challenges the ALJ's evaluation of her complaints of disabling pain and symptoms. As discussed below, the Court finds no error.

A. **The ALJ properly evaluated Dr. Hoogerman's opinion in evaluating Plaintiff's mental impairments, and his findings are supported by substantial evidence.**

Plaintiff challenges the ALJ's rejection of Dr. Hoogerman's opinion and most of the mental impairments described therein. Because of the paucity of corroborative evidence and the presence of contradictory evidence, this argument must be rejected.

The ALJ is required to follow a "special technique" required for sequentially evaluating mental impairments, as set out at 20 C.F.R. § 404.1520a. "When a claimant alleges disability due to a mental condition, the Commissioner *must* follow a special technique set forth in 20 C.F.R. § 404.1520a and the Listing of Impairment[s]." Waters v. Astrue, 495 F.Supp.2d 512, 515 (D. Md. 2007) (emphasis in original). First, the ALJ is to evaluate the

symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b). Second, the ALJ must rate the degree of functional limitation resulting from the mental impairment in four functional areas (activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation) on a specific scale. 20 C.F.R. §404.1520a(c)(3) and (4). The first three areas are to be rated according to a five-point scale (none, mild, moderate, marked, and extreme), and the last area is to be rated according to a four-point scale (none, one or two, three, or four or more). 20 C.F.R. § 416.920a(c)(4). If a claimant's degree of limitation is rated as none or mild in the first three areas and none in the last area, the impairment will generally be found to be non-severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities . . . ." 20 C.F.R. § 416.920a(d)(1). The ALJ is required to document the application of this special technique in his decision. 20 C.F.R. § 416.920a(e)(2).

In the present case, the ALJ properly followed this technique in reviewing the record evidence of Plaintiff's mental impairments and limitations. First, the ALJ found that Dr. Hoogerman's evaluation, Plaintiff's poor grades

in school, and her single attempt at mental health counseling evidenced potential mental impairments. [T. 18-19]. He then discussed each of the potential impairments presented by the evidence. Specifically, the ALJ concluded that Plaintiff's depression, which was noted in her one counseling session as well as in Dr. Hoogerman's evaluation, was a severe condition which caused "some limitations" but was not so severe as to preclude work activities. [T. 21]. The only evidence of Plaintiff's other claimed impairments -- borderline intellectual functioning, personality disorder, and somatoform disorder -- arose from Dr. Hoogerman's opinion. Before considering the severity of these impairments, the ALJ thus weighed Dr. Hoogerman's opinion in accordance with regulatory requirements. In so doing, the ALJ noted that Dr. Hoogerman's conclusion regarding the severity of these impairments was not supported by the objective medical evidence, which showed only intermittent treatment for occasional and minimal symptoms. The ALJ placed particular emphasis on the fact that Plaintiff failed to comply with prescribed psychotherapy. [T. 21]. This was entirely proper, as an ALJ may draw negative inferences about the existence or severity of problems from a claimant's failure to comply with treatment recommendations. See McKenney v. Apfel, 38 F.Supp.2d 1249, 1259 (D. Kan. 1999). As Dr. Hoogerman was

not a treating physician but a one-time examining physician, and no significant other, creditable accepted source evidence of mental impairments appears in the record, the ALJ appropriately credited his opinion with "very limited evidentiary weight." [T. 21].

Plaintiff suggests that the ALJ should have ordered a State Agency psychological evaluation, thus implying that the ALJ failed to meet his duty to develop the record fully. [Doc. 8 at 3]. This argument, however, ignores the fact that Plaintiff must first meet her own burden to produce evidence suggesting a mental impairment. See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Given Plaintiff's minimal evidence of mental impairments and her demonstrated noncompliance with psychotherapy, Plaintiff has failed to meet that burden or to trigger any further duty on the part of the ALJ. Plaintiff's first assignment of error, therefore, is overruled.

**B. The ALJ's analysis of Plaintiff's complaints of pain and other symptoms followed applicable law, and his findings are supported by substantial evidence.**

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and

which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir.1996) (citing 20 C.F.R. § 416.929(b); § 404.1529(b); 42 U.S.C. § 423(d)(5)(A)). If there is such evidence, then the ALJ must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Id. at 595 (citing 20 C.F.R. § 416.929(c)(1) and § 404.1529(c)(1)).

Having found that Plaintiff's spine, shoulder, and joint problems were severe conditions that could reasonably be expected to cause pain, the ALJ proceeded to evaluated the Plaintiff's complaints. In so doing, he identified the specific medical evidence which conflicted with her testimony of disabling pain. [T. 26, 27]. Specifically, he noted that despite her recurring complaints of joint pain, she received only conservative outpatient treatment and never required surgical intervention or hospitalization. [T. 26]. Further, the ALJ noted that the Plaintiff took only Tramadol and over-the-counter medications, along with occasional injections, rather than stronger pain relief methods. [T. 27]. It also bears nothing that while concluding that Plaintiff's complaint were not fully credible, the ALJ nevertheless took Plaintiff's subjective complaints of pain into consideration by rejecting one State Agency physician's opinion [T. 271-79] that she could perform medium work, in favor of medical source

14

opinions that she could perform only light work. [T. 27]. For all of these reasons the manner by which the ALJ concluded that Plaintiff's credibility was diminished was consistent with the law and the evidence.

While counsel claims that Plaintiff's testimony is "well corroborated by her medical records," he fails to cite even to one corroborating note. Such an unsupported assertion is entirely inadequate to persuade the Court that the ALJ erred in his assessment of Plaintiff's credibility.

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court finds that the ALJ's analysis of pain and symptoms at step four followed applicable law and is supported by substantial evidence.

## VII. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding of no disability through the date of his decision.

**O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 9] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 7] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: December 1, 2011

Martin Reidinger
United States District Judge